Roof *v.* Fountain.

New York General Term, September 3, 1855. *Mitchell, Clerke* and *Cowles,* Justices.]

⎯⎯⎯⎯•Q•⎯⎯⎯⎯

Roof *vs.* Fountain, executor &c.

A testator, by his will, devised as follows: " I give and bequeath unto my daughter Mary Roof the use or interest of $800, for and during her natural life; and at her decease I give and bequeath unto my granddaughter, M. A., $200 of the said $800." The testator subsequently directed his executors to divide among his children and grandchildren, in proportion to the several legacies bequeathed to them, " the said sum of $600 left at the decease of his daughter Mary, and all the residue and remainder of his estate not otherwise disposed of." After the testator's death, and during the lifetime of Mary Roof, two of the legatees, being married women, with their husbands quitclaimed to R. R., husband of Mary Roof, and to his heirs and assigns forever, " all the right and title which they then had or might thereafter have, to a certain legacy bequeathed to his wife Mary Roof" by the testator. *Held* that the thing released or quitclaimed was only the legacy bequeathed to Mary Roof, which was not the $800 or the $600, but only the *use* or *interest* of $800 for life; the legacy bequeathed to her being only a life estate in the $800, and the legacy given to the other legatees being the reversion in that sum. That such reversion did not pass by the quitclaim; and that consequently the executor was not liable to R. R. for the amount of the shares in the $600 which he had paid over to the assignors or releasors, after the death of Mary Roof. Clerke, J., dissented.

APPEAL by the defendant, from a judgment entered upon the report of a referee. The action was brought against the defendant, as executor of Ezra Fountain deceased, to recover the share or interest to which Alfred Wood and Electa his wife, and John Woolsey and Elizabeth his wife, were entitled after the death of one Mary Roof, wife of the plaintiff, under and by virtue of the will of Ezra Fountain deceased, in the sum of $600,

part of the sum of $800 of which said Mary Roof had the use for her life by the terms of said will; it being alleged that the said Woods and Woolseys had transferred their right thereto to the plaintiff, Rice Roof, who had given notice of such transfer to the defendant, the executor of Ezra Fountain, before he had paid over the same according to the terms of the will.

On the trial, before the referee, the plaintiff offered and read in evidence the following instrument, the execution and delivery of which were admitted: "Know all men by these presents, that we, Alfred Wood and Electa his wife, of the town of Bedford, county of Westchester, and state of New York, have *quitclaimed*, and by these presents do quitclaim unto Rice Roof, of the city of New York, and to his heirs and assigns forever, all our right and title which we now have or may hereafter have to a certain legacy bequeathed to his wife Mary Roof, by our father and father-in-law, Ezra Fountain. In witness," &c. A similar instrument, executed by John Woolsey and his wife, was also read in evidence. The plaintiff's counsel then produced and read in evidence the last will and testament of the testator, Ezra Fountain, the contents of which are sufficiently set forth in the opinions which follow. The referee reported, as matters of law, that Mrs. Wood and Mrs. Woolsey intended to convey, and did convey, by the instruments so executed by them, their respective shares of the said $800 to the plaintiff, and that the latter was entitled to judgment for the sum of $353.62, and costs.

*A. L. McDonald*, for the plaintiff.

*Ferris & Frost*, for the defendant.

COWLES, J. By the will set forth in the proof it appears that the testator, Ezra Fountain, bequeathed unto his daughter "Mary Roof the use or interest of $800 for and during her natural life;" and by the same will $200 of the $800, upon the decease of the said Mary Roof, was given to the testator's granddaughter, Matilda Adams. The will then provides that the sum of $600 left at the decease of Mary Roof (being that same

sum of $800 above mentioned less the $200 given to Matilda Adams) and all the residue and remainder of his estate not otherwise disposed of, he divided among his children and grandchildren, in proportion to the several legacies bequeathed to each of them by his will.

During the lifetime of Mary Roof and after the testator's death, the plaintiff, who was the husband of Mary Roof, took from Alfred Wood and Electa his wife and from John Woolsey and Elizabeth his wife, two several instruments by which they did "quitclaim unto Rice Roof of the city of New York, and to his heirs and assigns forever, all our [the assignors'] right and title which we now have or may hereafter have to a *certain legacy* bequeathed to his [plaintiff's] wife Mary Roof, by our father and father-in-law, Ezra Fountain."

The only *legacy* which Mary Roof took under the will was the "use or interest" for life of the $800. The above named Electa Wood and Elizabeth Woolsey who joined in the instruments above alluded to, to the plaintiff, it is admitted, were two of the parties who were by the terms of the will to share in the distribution of the "residue and remainder" of the testator's estate, including the above sum of $600. The plaintiff claims that by the two conveyances or quitclaims to him he took the shares in the $600 which upon the death of Mary Roof, Electa Wood and Elizabeth Woolsey were to receive. And he now claims to recover from the defendant, who, as executor of Ezra Fountain, has paid over those shares to Mrs. Wood and Mrs. Woolsey. The difficulty in the case is, that the plaintiff only bought from Mrs. Wood and Mrs. Woolsey and their respective husbands the "legacy bequeathed to his (plaintiff's) wife, Mary Roof" by the will of Ezra Fountain; and all that Mary Roof took under that will, was the "use or interest" for life of the $800. Neither the $800, nor any portion of that principal sum, was a *legacy* to Mary Roof, and could not therefore have been sold by Mrs. Wood and Mrs. Woolsey to the plaintiff. Even if the parties in fact intended to convey the contingent interest which they had in the $600, after Mary Roof's death, they have failed to so express it in the release or

Roof *v.* Fountain.

"quitclaim" to the plaintiff. The case stands on the mere *legal effect* of the *quitclaim* ; for even had it been allowable to explain by parol, or *dehors* those quitclaims, that the word *legacy* as therein used, was intended to have a broader or more extended construction than is implied by the quitclaims on their face, yet no such proof was offered or given. . We have, therefore, only to ascertain the fair legal construction to be given to the instruments under which the plaintiff claims ; and upon that question there can be no doubt. The plaintiff took just such interest as his grantors had in the legacy left by the will to Mary Roof. What Mary Roof took under the will was the use or interest of $800 during her natural life—and whatever interest the plaintiff's grantors had in that " use or interest" of the $800 for the life of Mary Roof, was by these quitclaims conveyed to the plaintiff, and nothing more. He consequently had no interest in the $800, or any part of it, after the death of Mary Roof, and the defendant cannot be made responsible for having distributed the $600 as provided for in the will. The referee's report must be set aside and a new trial granted, costs to abide the event.

MITCHELL, P. J. The will is in this form : " I give and bequeath unto my daughter, Mary Roof, the use or interest of $800, for and during her natural life ; and at her decease I give and bequeath unto my granddaughter, Matilda Adams, $200 of the said $800." Afterwards the testator directs his executors to divide among his children and grandchildren, in proportion to the several legacies bequeathed to them, " the said sum of $600 left at the decease of his daughter Mary, and all the residue and remainder of his estate not otherwise disposed of."

Two of the legatees, being married women, with their husbands quitclaimed to Rice Roof, husband of Mary Roof, and to his heirs and assigns forever, " all the right and title which they then had or might thereafter have to a certain legacy bequeathed to his wife Mary Roof" by the testator. The plaintiff, Rice Roof, contends that the executor is bound to pay the

Roof *v.* Fountain.

principal of the $600 to him. The executor and the assignees contend that the quitclaim merely released to Rice Roof any possible claim they might have to the income of the $800. It is very probable, from some circumstances, that this was the intention. But whatever the intention was, it is expressed in so uncertain a way that it is not remarkable that there should be a contrariety of opinion about it. There is no consideration for the release, expressed in it, and none proved. Could it then operate any further than as a confirmation of what was already bequeathed to the wife of the releasee, but which might possibly be disputed by the releasors? Where an instrument is without consideration, this seems to accord best with the probable intention of the releasor. In such case, too, there is no reason for extending the description of the thing released, beyond its literal meaning, or to give it a liberal interpretation. The thing released is only the legacy bequeathed to Mary Roof. That legacy was not the $800 or the $600, but, in the words of the will, only "the *use or interest* of $800 for and during her natural life." So that when the legacy to her was released, it was a release only of the *use or interest in the* $800. The legacy bequeathed to Mary Roof was only a life estate in the $800, and the legacy bequeathed to the assignors was the reversion in that sum. The first, the assignors professed to release, but not any thing bequeathed to them.

I concur with my brother Cowles that the referee's report must be set aside, and a new trial granted; costs to abide the event.

CLERKE, J. If the assignors intended to release any thing but the proportionate parts of the legacy, to which they would be entitled after the death of Mary Roof, they were performing an idle ceremony. They had nothing else to release: they had no claim to the life interest bequeathed to her, but a future right to a portion of the money of which Mary Roof was to have the use during her life. This was the *legacy* (the *principal,*) referred to in the assignment; and which, according to the fair

interpretation of the language, taken in connection with the condition and circumstances of the parties, they intended to convey. I do not concur.

Report set aside, and new trial granted.

